[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10373
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cv-61072-WPD


DENNIS HAYNES,
individually,

                                                        Plaintiff-Appellant

versus

DUNKIN' DONUTS LLC,
a foreign limited liability company,
DD IP HOLDER LLC,
CASHSTAR, INC.,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 31, 2018)

Before ED CARNES, Chief Judge, WILSON, and FAY, Circuit Judges.

PER CURIAM:

Dennis Haynes is blind.  To use the internet, he relies on screen reading software, specifically a program called "JAWS."  According to the allegations in his third amended complaint, one day Haynes attempted to go to the website for Dunkin' Donuts, www.dunkindonuts.com, but the website was not compatible with his, or any, screen reading software.

Haynes sued Dunkin' Donuts, LLC, claiming that it violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12188 et seq., by not maintaining a website compatible with screen reading software.[1]  He sought declaratory and injunctive relief under 42 U.S.C. § 12188 and attorney's fees under 42 U.S.C § 12205.

On Dunkin' Donuts' motion, the district court dismissed Haynes' complaint.  It determined that Haynes did not state a plausible claim for relief under Title III of the ADA.  It reasoned that Haynes failed to allege a nexus between the barriers to access that he faced on the website and his inability to access goods and services at Dunkin' Donuts' physical store.  This is Haynes' appeal.

---

[1] Along with Dunkin' Donuts, Haynes sued DD IP Holder LLC and Cashstar, Inc.  Those three companies operated www.dunkindonuts.com and its associated websites.  We'll refer to them collectively as Dunkin' Donuts.

2

"We review de novo the dismissal of a complaint for failure to state a claim, construing all [factual] allegations in the complaint as true and in the light most favorable to the plaintiff." Rendon v. Valleycrest Prods., Ltd., 294 F.3d 1279, 1281–82 (11th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S. Ct. at 1950.

Haynes contends that the district court erred in dismissing his third amended complaint. He argues that Dunkin' Donuts' "website is a service, facility, privilege, advantage, benefit and accommodation of" Dunkin' Donuts' place of public accommodation (that is, its shops), which means that the ADA requires the website to be accessible to blind people like himself. Dunkin' Donuts does not dispute that the shops are places of public accommodation, see 42 U.S.C. § 12181(7)(B) (listing "a restaurant" as an example of a "place of public accommodation"), but argues that its website is neither a place of public accommodation nor a good, service, facility, privilege, or advantage of its shops, and as a result, it claims that Haynes has failed to state a claim because the website

3

is not covered by the ADA.[2]

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a). One example of discrimination prohibited by the ADA is when a place of public accommodation "fail[s] to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." Id. § 12182(b)(2)(A)(iii).

The prohibition on discrimination is not limited to tangible barriers that disabled persons face but can extend to intangible barriers as well. Rendon, 294 F.3d at 1283 ("A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III [of the ADA] covers both tangible barriers . . . and intangible barriers . . . that restrict a disabled

---

[2] Dunkin' Donuts does argue that even if the website is a service, privilege, advantage, or accommodation, it is not a service, privilege, advantage, or accommodation of its physical place of public accommodation because, according to Dunkin' Donuts, it is merely the franchisor of Dunkin' Donuts shops. But the complaint doesn't allege anything about Dunkin' Donuts being a franchisor; it alleges that Dunkin' Donuts owns and operates shops all around the country and near Haynes. At this stage it would be inappropriate to consider Dunkin' Donuts' factual assertions that it is merely a franchisor. The district court did not convert the motion to dismiss into a motion for summary judgment, which would have allowed it to consider materials outside the complaint. See Day v. Taylor, 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint.").

person's ability to enjoy the defendant entity's goods, services and privileges.") (footnotes omitted).  In Rendon, the plaintiffs alleged that a telephone selection process screened out disabled contestants from competing on the show Who Wants to be a Millionaire.  Id.  Even though the telephone selection process was an intangible barrier, and was not at the studio's place of public accommodation, we held that the plaintiffs stated a claim for relief under the ADA because the inaccessibility of the telephone selection process prevented the plaintiffs from accessing a privilege (the opportunity to be a contestant on the show) that was afforded by the television studio.  Id. at 1283, 1286.

Haynes alleges that the inaccessibility of Dunkin' Donuts' website has similarly denied blind people the ability to enjoy the goods, services, privileges, and advantages of Dunkin' Donuts' shops.  Among other things, he alleges that Dunkin' Donuts' website allows customers to locate physical Dunkin' Donuts store locations and purchase gift cards online.  Haynes also alleges that Dunkin' Donuts' website "provides access to" and "information about . . . the goods, services, facilities, privileges, advantages or accommodations of" Dunkin' Donuts' shops.  Because the website isn't compatible with screen reader software, Haynes alleges that neither he, nor any blind person, can use those features.

Taking all of those allegations in the complaint as true and viewing them in the light most favorable to Haynes, as we must at this stage, see id. at 1281–82, he

has shown a plausible claim for relief under the ADA.  It appears that the website is a service that facilitates the use of Dunkin' Donuts' shops, which are places of public accommodation.  And the ADA is clear that whatever goods and services Dunkin' Donuts offers as a part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services are intangible.  See 42 U.S.C. § 12182(a); see also Rendon 294 F.3d at 1283.  As much as the telephone selection process in Rendon prevented the plaintiffs in that case from accessing a privilege of that defendant's physical place of public accommodation, the alleged inaccessibility of Dunkin' Donuts' website denies Haynes access to the services of the shops that are available on Dunkin' Donuts' website, which includes the information about store locations and the ability to buy gift cards online.  The failure to make those services accessible to the blind can be said to exclude, deny, or otherwise treat blind people "differently than other individuals because of the absence of auxiliary aids and services . . . ."  42 U.S.C. § 12182(b)(2)(A)(iii); see also 28 C.F.R. § 36.303(b)(2) (giving "screen reader software" as an example of an auxiliary aid or service for "individuals who are blind or have low vision").  And as a result, Haynes has alleged a plausible claim for relief under the ADA.

**REVERSED AND REMANDED.**